UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LAWRENCE B. LENNON, ROBERT SANFORD, CORY R. BURNS, PATRICIA A. THOMAS, JASON C. BROWN, AMANDA D. ALFORD, ASHLEY L. WILLIAMSON, ERIN E. MURRAY, LIZA J. BARTON, MICHAEL S. FULLER, LINDA H. HUGHES, JACOB B. SWAIN, ROBERT H. HAWK, KENNETH I. MCCLUNG, ROBERT G. SPALLER, JACOB O. WHITHAM, NICOLE K. HUNT, and J. DERON GABRIEL, *on behalf of themselves and all others similarly situated*, | No. 1:15-cv-02072-JMS-MJD |

*Plaintiffs,*

*vs.*

CITY OF CARMEL, INDIANA; RICK SHARP, ERIC SEIDENSTICKER, CAROL SCHLEIF, SUE FINKAM, LUCI SNYDER, RON CARTER, KEVIN RIDER, THE HONORABLE JAMES BRAINARD, TIMOTHY GREEN, and DOUGLAS C. HANEY, *in their individual capacities*; CARMEL CITY COURT; THE HONORABLE BRIAN G. POINDEXTER, *in his official capacity as Presiding City Court Judge*; and KENT W. ABERNATHY, *in his official capacity as Superintendent of Indiana Bureau of Motor Vehicles*,

*Defendants.*

## <u>ORDER</u>

In their third attempt at pleading their case, Plaintiffs assert that their civil rights were violated when they received traffic tickets for violating Carmel, Indiana City Ordinance § 8-2, which incorporated state law traffic violations by reference.  It is important to note the context in which this case arose.  Jason Maraman, who is not a party to this lawsuit, received a § 8-2 citation for speeding from the Carmel Police Department.  When the Carmel City Court entered judgment against him, he requested a trial de novo and filed a motion to dismiss with the trial court.  The

trial court denied his motion to dismiss and, proceeding *pro se*, he appealed that decision to the Indiana Court of Appeals. *See Maraman v. City of Carmel*, 47 N.E.3d 1218 (Ind. Ct. App. 2015). Specifically, Mr. Maraman challenged the validity of § 8-2 based on Indiana's "Home Rule" laws. *Id.* at 1221-22 (citing Ind. Code § 36-1-3-8(a)(8) (stating that municipalities do not have the "power to prescribe a penalty for conduct constituting a crime or infraction under statute")). The Indiana Court of Appeals agreed with Mr. Maraman, found that § 8-2 was invalid and reversed the trial court's denial of his motion to dismiss, but did not make a determination regarding the constitutionality of § 8-2. *Id.* at 1224. The Court of Appeals issued its decision on December 11, 2015, and the Indiana Supreme Court denied transfer on April 12, 2016.

In stark contrast to Mr. Maraman, none of the Plaintiffs here sought dismissal of their § 8-2 citations or challenged the end-result of their adjudications, by appeal or otherwise, at the state court level. Nevertheless, in an apparent attempt to piggyback onto Mr. Maraman's success, Plaintiffs filed this lawsuit a few weeks after the Indiana Court of Appeals' decision, on December 30, 2015.

Presently pending before the Court are: (1) a Motion to Dismiss filed by Defendants Carmel City Court, the Honorable Brian Poindexter, and Kent Abernathy, Commissioner of the Indiana Bureau of Motor Vehicles ("BMV") (collectively, "the Driving Record Defendants"), [Filing No. 56]; (2) a Motion to Dismiss filed by Defendants City of Carmel, Indiana, Rick Sharp, Eric Seidensticker, Carol Schleif, Sue Finkam, Luci Snyder, Ron Carter, Kevin Rider, the Honorable James Brainard, Timothy Green, and Douglas Haney (collectively, "the Carmel Defendants"), [Filing No. 58]; (3) a Motion to Strike Carmel Defendants' Exhibits 1-19 and § II of Their Brief in Support of Motion to Dismiss or, in the Alternative, Motion to Convert Carmel Defendants'

Motion to Dismiss Into Summary Judgment Motion filed by Plaintiffs, [Filing No. 61]; (4) a Motion for Leave to File Surreply Brief in Opposition to Driving Record Defendants' Motion to Dismiss filed by Plaintiffs, [Filing No. 68]; and (5) a Motion to Impose Sanctions filed by the Carmel Defendants, [Filing No. 72].[1]

The pending motions all relate to the sufficiency of the Third Amended Complaint (the "Complaint") – the operative complaint in this matter. [Filing No. 45.] Even the Carmel Defendants' Motion to Impose Sanctions turns on that issue. The Court will first consider the pending Motion to Strike, [Filing No. 61], because it relates to the information the Court will consider in analyzing the Motions to Dismiss.

# I.
## THE MOTION TO STRIKE

In their Motion to Strike, Plaintiffs request that the Court strike exhibits 1 through 19 submitted by the Carmel Defendants in support of their Motion to Dismiss, and the discussion related to those documents in their response brief. [Filing No. 61 at 1.] In the alternative, Plaintiffs request that the Carmel Defendants' Motion to Dismiss be converted into a Motion for Summary Judgment. [Filing No. 61 at 1.] The documents Plaintiffs seek to strike are the state court records relating to each Plaintiff's traffic citation, including the tickets themselves, [*see, e.g.,* Filing 60-1 at 2], the state court dockets related to the disposition of the tickets, [*see, e.g.,* Filing No. 60-1 at 3], and, for some Plaintiffs, deferral agreements, [*see, e.g.,* Filing No. 60-5 at 3-6]. In the Motion to Strike, Plaintiffs argue that although they agree there is a public records exception to the rule

---

[1] Also pending is a Request for Oral Argument filed by the Carmel Defendants, in which they request oral argument on their Motion to Dismiss. [Filing No. 67.] The parties' briefs afforded the Court an adequate basis on which to rule on the Carmel Defendants' Motion to Dismiss without the assistance of oral argument. The Court, therefore, **DENIES** the Carmel Defendants' Request for Oral Argument, [Filing No. 67].

that extraneous material should not be considered in connection with a motion to dismiss, this situation is different because the Carmel Defendants are "asking the Court to use documents which are the subject of dispute as a basis for determining the merits of the suit." [Filing No. 61 at 4.] Plaintiffs go on to discuss the substance of the documents, and argue that they contain hearsay and are "subject to interpretation." [Filing No. 61 at 4-5.]

In response, the Carmel Defendants argue that the exhibits are public judicial records, and are permitted in connection with a motion to dismiss brought under Fed. R. Civ. P. 12(b)(1). [Filing No. 70 at 1-2.] They also assert that the Court can take judicial notice of public records in deciding a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6). [Filing No. 70 at 3.]

On reply, Plaintiffs argue that the exhibits "add no new dispositive information that is not the subject of reasonable dispute, or alternatively, that is not already contained in the Complaint." [Filing No. 71 at 1.] They contend that the Carmel Defendants "do not limit the use of the extrinsic evidence's disputed facts to their 12(b)(1) arguments…." [Filing No. 71 at 2.]

When presented with a factual challenge to a court's subject-matter jurisdiction under Rule 12(b)(1), the court may consider evidence beyond the pleadings in order to make the necessary factual determinations to resolve its own jurisdiction. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009). The Carmel Defendants argue in their Motion to Dismiss, among other things, that the Court lacks subject-matter jurisdiction over this matter based on the *Rooker-Feldman* doctrine, and so their claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1). [*See* Filing No. 59 at 12-16.] As discussed more fully below, the exhibits reflect whether each particular Plaintiff had a judgment entered against them, which is integral to the Court's analysis of whether the *Rooker-Feldman* doctrine may preclude it from exercising subject-matter

jurisdiction. Accordingly, because the exhibits directly relate to the portion of the Carmel Defendants' Motion to Dismiss brought under Fed. R. Civ. P. 12(b)(1), they are properly considered by the Court.

Additionally, the Court can consider the exhibits in connection with the portion of the Carmel Defendants' Motion to Dismiss that is brought under Fed. R. Civ. P. 12(b)(6). The exhibits are part of the state court proceedings involving Plaintiffs, and so are public records of which the Court may take judicial notice. *See White v. Keely*, 814 F.3d 883, 886 n.2 (7th Cir. 2016) ("We may take judicial notice of public records, including public court documents, in ruling on a motion to dismiss under Rule 12(b)(6)"); *Olson v. Champaign County, Ill.*, 784 F.3d 1093, 1097 n.1 (7th Cir. 2015) (same principle).

The Court finds Plaintiffs' position regarding the exhibits somewhat ironic. On the one hand, the tickets, how they came about, and how they were resolved is the primary basis for Plaintiffs' case. On the other hand, Plaintiffs do not want the Court to consider the actual tickets and the records of the state court proceedings because they fear the Carmel Defendants are misrepresenting their meaning. Plaintiffs cannot have it both ways. The exhibits are properly considered because they are integral to the Carmel Defendants' dismissal arguments under Fed. R. Civ. P. 12(b)(1), and because they are public records and so may be considered in connection with the Carmel Defendants' dismissal arguments under Fed. R. Civ. P. 12(b)(6). Because the Court can properly consider the exhibits, converting the Carmel Defendants' Motion to Dismiss into a Motion for Summary Judgment is not warranted. Plaintiffs' Motion to Strike Carmel Defendants' Exhibits 1-19 and § II of Their Brief in Support of Motion to Dismiss or, in the Alternative, Motion to Convert Carmel Defendants' Motion to Dismiss Into Summary Judgment Motion filed by Plaintiffs, [Filing No. 61], is **DENIED**.

## II.
### THE MOTIONS TO DISMISS

The Driving Record Defendants and the Carmel Defendants have moved separately to dismiss this matter, both arguing that the Court lacks subject-matter jurisdiction and that the Complaint fails to state a claim upon which relief can be granted. [*See* Filing No. 57; Filing No. 59.]

### A.  Standard of Review

"Federal Rule of Civil Procedure 12(b)(1) allows a party to dismiss a claim for lack of subject matter jurisdiction." *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). The burden is on the plaintiff to prove, by a preponderance of the evidence, that subject-matter jurisdiction exists for his or her claims. *See Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003).

A 12(b)(6) motion to dismiss asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007). In reviewing the sufficiency of the complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of the plaintiff. *See Active Disposal, Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011). The Court will not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief. *See McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011). Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012). This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Federal Rule of Civil Procedure 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)

(quoting Fed. R. Civ. P. 8(a)(2)).  "Specific facts are not necessary, the statement need only 'give the defendant fair notice of what the…claim is and the grounds upon which it rests.'"  *Erickson*, 551 U.S. at 93 (quoting *Twombly*, 550 U.S. at 555).

### B.  Allegations of the Complaint

At the outset, the Court notes that Plaintiffs have changed their allegations over time, dodging and weaving between arguments asserted by Defendants in previous motions to dismiss, and even statements from the Court.  Indeed, Plaintiffs filed the initial Complaint in this matter on December 30, 2015, an Amended Complaint on February 1, 2016, a Motion for Emergency Injunctive Relief on February 25, 2016 (which was later terminated as moot), a Motion for Leave to File Second Amended Complaint on March 8, 2016 (which they later withdrew), a Motion for Leave to File Third Amended Complaint on March 21, 2016, a Notice of Voluntary Dismissal of several defendants on March 24, 2016, a Third Amended Complaint on March 31, 2016, and a Notice of Voluntary Dismissal of one defendant on April 7, 2016.  There are eighty filings thus far in this nine month old case, and yet very little substantive activity has occurred.

Evaluation of the pending motions has been challenging, due to the ever-changing nature of Plaintiffs' allegations.  That being said, the pending Motions to Dismiss require the Court to evaluate the sufficiency of the allegations contained in the Complaint – not the sufficiency of Plaintiffs' latest interpretation of the allegations contained in the Complaint, as they may argue in their various briefs.  The Court evaluates the pending motions with that principle in mind.

Plaintiffs are all motorists who were driving in and around Carmel, Indiana when they were "stopped and prevented from free travel of roads in Carmel by members of the Carmel Police Department."  [Filing No. 45 at 6.]  All Plaintiffs were given citations under Carmel City Ordinance § 8-2, which provides "[u]nless otherwise provided herein, the provisions set forth in I.C.

- 7 -

§§ 9-21-1-1 through 9-21-20-3 (Traffic Regulations) are adopted by reference and made a part of this chapter with the same force and effect as though set forth here verbatim." [Filing No. 45 at 8.] Plaintiffs allege that § 8-2 "effectively duplicat[ed] state law and re-codif[ied] those state statutes as being part of the Carmel City Ordinance." [Filing No. 45 at 8.] Plaintiffs claim that the City of Carmel "universally employed § 8-2 to operate outside Indiana's long established traffic law framework so it could maximize city revenue," and that it "had a policy of trying to turn every traffic stop made by the Carmel police into a § 8-2 ordinance violation stop, no matter the traffic situation and without regard to whether there was an existing Carmel ordinance to support the citation." [Filing No. 45 at 12.]

The Court finds that the clearest way to evaluate Plaintiffs' allegations is to break those allegations up into three time frames:[2]

- Pre-Judgment/Pre-Adjudication Claims, relating to events arising from the traffic stop itself or the issuing of a ticket – these include allegations that:

  o Plaintiffs were given false or limited information regarding their traffic infractions, [Filing No. 45 at 3; Filing No. 45 at 16; Filing No. 45 at 18];

  o The Carmel Police Department wrongfully ticketed motorists on Interstate 465, [Filing No. 45 at 14];

  o The City of Carmel had a policy of improperly ticketing motorists for non-moving violations, such as failure to wear a seatbelt or having an invalid license plate, [Filing No. 45 at 14];

- Judgment/Adjudication Claims, such as those arising from the actual entry of a judgment or entry into a deferral agreement – these include allegations that:

  o Plaintiffs entered into misleading deferral agreements, and paid more than they would have if judgment had been entered against them, [Filing No. 45 at 3; Filing No. 45 at 16];

---

[2] The Court first focuses on Plaintiffs' federal claims, and will address Plaintiffs' state law claims at the end of this Order.

- 8 -

- o Plaintiffs were illegally prosecuted and did not receive due process during their trials, [Filing No. 45 at 3];

- o Plaintiffs were deprived of the right to be judged by a tribunal untainted by a financial interest, [Filing No. 45 at 3-4];

- o The fines under § 8-2 were higher than the fines under corresponding state law, [Filing No. 45 at 15];

- o Defendants knew that Plaintiffs' costs to challenge the tickets exceeded the costs of paying the tickets, [Filing No. 45 at 16]; and

- Abstract Claims, related to the forwarding of abstracts to the BMV – these include allegations that:

- o Inaccurate information regarding Plaintiffs' traffic violations was provided to the BMV, [Filing No. 45 at 3; Filing No. 45 at 7];

- o Plaintiffs' civil rights were violated because the abstracts forwarded to the BMV did not reflect the actual judgments against them, [Filing No. 45 at 20].

For each of those time frames, two different groups of Plaintiffs assert claims:

- Those who received an adjudication related to the ticket (the "Adjudication Plaintiffs"), including:

- o Those who admitted to the offense, paid the fine, and did not appeal (the "Admission Plaintiffs") – this category includes Plaintiffs Liza Barton, Jason Brown, Cory Burns, Deron Gabriel, Linda Hughes, Robert Sanford, Nicole Hunt (for one of her two offenses), and Erin Murray[3];

- o Those who did not appear at a hearing so had a default judgment entered against them, and did not appeal (the "Default Plaintiffs") – this category includes Plaintiffs Nicole Hunt (for her other offense), Kenneth McClung, and Jacob Swain;

- o Those who had a bench trial, were convicted of the offense, and did not appeal (the "Bench Trial Plaintiffs") – this category includes Plaintiffs Robert Spaller, Patricia Thomas, Jacob Whitham, and Ashley Williamson; and

---

[3] Although Erin Murray initially entered into a deferral agreement, she did not comply with its terms and later voluntarily paid the judgment related to her traffic offense. [Filing No. 60-13.] Accordingly, she is properly considered an Admission Plaintiff.

- Those who entered into deferral agreements, paid a fine, and did not challenge the validity of those agreements at the state court level (the "Deferral Plaintiffs") – this category includes Plaintiffs Amanda Alford, Michael Fuller, Robert Hawk, and Lawrence Lennon.

[Filing No. 60-1 through Filing No. 60-19.]

Plaintiffs assert the following claims on behalf of themselves, and a class "which shall be established and identified during the discovery process":  (1) violation of 42 U.S.C. § 1983 against all Defendants except Carmel City Court; (2) violation of 42 U.S.C. § 1983, seeking only injunctive relief, against Carmel City Court; (3) violation of 42 U.S.C. § 1983, seeking only injunctive relief, against Kent Abernathy, the Commissioner of the BMV; (4) state law unjust enrichment against the City of Carmel; and (5) state law money had and received against the City of Carmel. [Filing No. 45 at 29-35.]  Plaintiffs also list several "anticipated future causes of action."[4]  [Filing No. 45 at 36-40.]

**C.  Discussion**

*1.  Standing*

Article III of the Constitution grants federal courts jurisdiction over "cases and controversies[,]" and the standing doctrine is the tool used to identify which cases and controversies the federal judicial process can appropriately resolve.  *Whitmore v. Arkansas*, 495 U.S. 149, 154-55 (1990); *see also Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 471-76 (1982).  Standing is "the threshold question in every federal case, determining the power of the court to entertain the suit."  *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  "[T]he 'irreducible constitutional minimum' of standing consists of three elements.  The

---

[4] The Court is unfamiliar with the concept of an "anticipated future cause of action."  A claim is either asserted in a complaint or it is not.  The Court therefore disregards those allegations in evaluating the Complaint.

plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged con-

duct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.  The

plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these ele-

ments."  *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016) (citations omitted).

The Federal Rules of Civil Procedure command that courts dismiss any suit over which

they lack subject matter jurisdiction – whether acting on the motion of a party or *sua sponte*.  *See*

Fed. R. Civ. P. 12(b)(1).  "If the court determines at any time that it lacks subject-matter jurisdic-

tion, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).  Accordingly, "not only may the

federal courts police subject matter jurisdiction *sua sponte*, they must."  *Wernsing v. Thompson*,

423 F.3d 732, 743 (7th Cir. 2005) (quotations and citations omitted); *see also Spaine v. Community*

*Contacts, Inc.*, 756 F.3d 542, 546 (7th Cir. 2014) ("Because standing implicates subject matter

jurisdiction, we address the question without being prompted by the parties").

In reviewing the pending motions to dismiss, the Court determined that the issue of stand-

ing needed to be addressed before it could consider Defendants' substantive arguments and issued

an Order to Show Cause on June 30, 2016.  [Filing No. 76.]  Specifically, the Court focused on

Plaintiffs' § 1983 claims related to the reporting of their § 8-2 convictions to the BMV (the Ab-

stract Claims), and seeking compensatory damages from the Carmel Defendants and prospective

injunctive relief from the Driving Record Defendants.  [*See* Filing No. 76 at 5 (Court stating that

"Plaintiffs' claims now focus on the reporting of their § 8-2 convictions to the BMV").]  The Order

to Show Cause required Plaintiffs to: "(1) set forth each federal claim asserted against each De-

fendant, including specifically the constitutional provision upon which it is based; (2) specify the

type of relief requested in connection with each federal claim from each Defendant; and (3) explain

why they have standing to assert each federal claim against each Defendant for each type of relief

sought." [Filing No. 76 at 7.]  Plaintiffs filed a thirty-two page response to the Court's Order to Show Cause.  However, the response appeared to wholly disregard the Court's directive, instead containing another attempt to reframe the allegations, and doing little to explain why Plaintiffs have standing.  Moreover, Plaintiffs also failed to identify the constitutional basis for each of their claims. While the Court might dismiss the case on that basis, the Court will attempt to discern Plaintiffs' arguments as they relate to the standing issue.

Plaintiffs discuss two types of claims in their response: (1) "pre-conviction harms/injuries" – which correspond with the Pre-Judgment/Pre-Adjudication Claims the Court has defined; and (2) "post-conviction harms/injuries" – which correspond with the Abstract Claims the Court has defined.  The Court did not question Plaintiffs' standing to assert the Pre-Judgment/Pre-Adjudication Claims in its Order to Show Cause, and finds that Plaintiffs have alleged a cognizable injury in connection with those claims such that they have standing.[5]  As to their Abstract Claims, the Court will set forth the parties' arguments and address whether each type of Plaintiff has standing to assert those claims.

Plaintiffs argue in their response to the Order to Show Cause that they have constitutionally protected liberty and property interests in accurate driving records from the BMV "that only list convictions as directed by Indiana law."  [Filing No. 77 at 20.]  They contend that the City of Carmel's "policy of issuing inaccurate administrative reports altered [their] driving status recognized by Indiana state law," and that "[n]egative information contained on one's driving record inevitably results in higher insurance premiums [and] Plaintiffs have universally reported increased premiums resulting from the inaccurate § 8-2 reports."  [Filing No. 77 at 20-21.]  Plaintiffs

---

[5] The Court's finding here should not be misconstrued as a determination that Plaintiffs have stated a claim.

also allege that they have each been assigned "points" on their driving record, based on their spe-

cific conviction report. [Filing No. 77 at 21.] They argue that the accumulation of points can lead

to suspension or revocation of a license, and that they have a property interest in keeping their

drivers' license. [Filing No. 77 at 22.] Plaintiffs assert that they each have had inappropriate

points put on their record, each had "their legal status as drivers unconstitutionally altered," and

each "incurred specific damages in the form of increased insurance premiums." [Filing No. 77 at

23.] Plaintiffs contend that whether or not they actually committed a traffic violation is not "rele-

vant to the due process issues that have been placed before the Court," and that "Indiana traffic

courts are not permitted to enter a conviction on matters outside the law motorists are charged with

violating." [Filing No. 77 at 24-27.] As to their Abstract Claims against the Carmel Defendants

for compensatory damages, Plaintiffs reiterate their allegations that they have suffered monetary

damages related to the Carmel City Court's act of forwarding inaccurate information to the BMV,

which the Carmel Defendants "initiated." [Filing No. 77 at 28.] As to their Abstract Claims

against the Driving Record Defendants for prospective relief, Plaintiffs state that they seek declar-

atory and injunctive relief against the Carmel City Court, and request, among other things, the

Carmel City Court to direct the BMV to remove notations of § 8-2 convictions or any reference to

conduct (and/or points related to that conduct) from their driving records. [Filing No. 77 at 30-

31.] They also seek declaratory and injunctive relief against "the BMV,"[6] requiring the BMV to

remove references to § 8-2 from their driving records, and points related to § 8-2 citations. [Filing

No. 77 at 31.]

---

[6] As the Court noted in the Order to Show Cause, the BMV is not a party to this action. [Filing No. 76 at 4.]

The Carmel Defendants respond by arguing that "Plaintiffs fail to identify any concrete harm and have failed to identify any conduct by the Carmel Defendants that is fairly traceable to any damages allegedly suffered by the Plaintiffs." [Filing No. 78 at 3.]  The Carmel Defendants also note that Plaintiffs did not address the validity of § 8-2 through the state appellate process, and therefore they do not have standing to assert a due process claim in this lawsuit.  [Filing No. 78 at 5.]  Plaintiffs go on to reiterate some of the arguments raised in their Motion to Dismiss, and also argue that Plaintiffs did not "address any injury traceable to" the individual Carmel Defendants, including Rick Sharp, Eric Seidensticker, Carol Schleif, Sue Finkam, Luci Snyder, Ron Carter, Kevin Rider, the Honorable James Brainard, Timothy Green, and Douglas Haney. [Filing No. 78 at 5-8.]

The Driving Record Defendants respond that Plaintiffs do not have standing because they have not alleged any consequences resulting from an inaccurate driving record, rather than from their underlying misconduct.  [Filing No. 79 at 3-4.]  They also assert that Plaintiffs have not demonstrated that there is a "free-standing right to sue the [Driving Record Defendants] over allegedly inaccurate abstracts of conviction or inaccurate entries on their driving records." [Filing No. 79 at 4.]  They contend that "[t]he harms Plaintiffs claim they have suffered would have occurred regardless of the accuracy of records because they committed traffic infractions." [Filing No. 79 at 4.]  The Driving Record Defendants argue that the harms Plaintiffs have set forth – "increased insurance premiums, mandatory defensive driving courses, 'black marks' during the insurance underwriting process, points on their licenses" – are a result of the traffic citations, and not the alleged inaccuracies in their driving records, and would have occurred if they had been cited under state law instead of § 8-2.  [Filing No. 79 at 4.]  They assert that any future harms

Plaintiffs point to, such as that they may be considered habitual traffic offenders, are speculative. [Filing No. 79 at 5.]

Despite the Court's instruction that no reply to the Order to Show Cause was necessary, [Filing No. 76 at 7], Plaintiffs filed a reply in which they reiterated their arguments and stated that "the denial of Due Process…is a concrete harm unto itself," and that "even without the other concrete injuries outlined in Plaintiffs['] brief, the injury component of Standing is established by Plaintiffs' Due Process violation claims." [Filing No. 80 at 2.]

Plaintiffs spend very little time actually explaining why they have standing to assert their Abstract Claims, instead reiterating their allegations and, in some cases, spinning those allegations differently than they are set forth in the Complaint. The Court recognizes that it required Plaintiffs to define their claims in their response to the Order to Show Cause, but this was not an invitation to amend those claims. It is well-settled that a party may not amend its claims through briefing. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011) (referencing "the axiomatic rule that a plaintiff may not amend his complaint in his response brief"). Again, the Court will focus on the allegations contained in the Complaint when evaluating Plaintiffs' standing to assert the Abstract Claims.

### a. The Adjudication Plaintiffs

While the Adjudication Plaintiffs resolved their traffic citations in different ways, they all assert the same Abstract Claims – specifically, that their driving abstracts were forwarded to the BMV and contained inaccurate information.[7]  They contend in their response to the Order to Show

---

[7] It is undisputed that abstracts for the Adjudication Plaintiffs were, in fact, forwarded to the BMV. [*See, e.g.*, Filing No. 60-2 (reflecting that Admission Plaintiff Liza Barton's SR16 abstract was sent to BMV); Filing No. 60-12 (reflecting that Default Plaintiff Kenneth McClung's SR16 abstract was sent to BMV); Filing No. 60-15 (reflecting that Bench Trial Plaintiff Robert Spaller's SR16 abstract was sent to BMV).]

Cause that they suffered concrete damages, such as increased insurance premiums, "black marks" on their driving records, and "points" reflected on their driving records. [Filing No. 77 at 21-22.] The problem is that none of these allegations appear in the Complaint. Instead, Plaintiffs only allege generally that they have incurred or might later incur monetary damages from negative information placed on their driving records. [*See, e.g.*, Filing No. 45 at 7.] Again, the Court's Order to Show Cause was not an invitation for Plaintiffs to amend their claims.

Even assuming that simply alleging "monetary damages" is generally sufficient to allege standing, Plaintiffs face another problem: they do not tie their damages to either the Carmel Defendants' or the Driving Record Defendants' conduct. As the Court noted in the Order to Show Cause, Plaintiffs "do not dispute that they actually committed a traffic violation, and do not allege that their driving record was impacted in a way that it would not have been had they been charged under a state law for their traffic violation instead." [Filing No. 76 at 6.] Plaintiffs' response falls short of denying that they committed a traffic violation. [*See* Filing No. 77 at 24 (Plaintiffs arguing that they have never stated that they actually committed traffic violations, and that whether or not they did so is irrelevant "to the due process issues that have been placed before the Court").] This is likely because they have attempted to distance themselves from any direct challenge to their convictions due to the problems that come with such a challenge (which the Court discusses in more detail below). But, as a result of creating that distance, Plaintiffs have not alleged that the abstracts forwarded to the BMV, and the impact those abstracts had on their driving records, would have been any different. If they were engaged in the illegal conduct and § 8-2 did not exist, they would have been ticketed under a state law and the abstract forwarded to the BMV would have had the same impact on their driving records. Further, Plaintiffs ignore the fact that § 8-2 was a valid ordinance at the time of their citations, and there was no indication otherwise. They have

not alleged any injury tied to the fact that they were cited under § 8-2 and, accordingly, lack standing to assert Abstract Claims related to the impact the abstracts had on their driving records.

Additionally, any future harms Plaintiffs discuss in their response to the Order to Show Cause do not save their Abstract Claims. Plaintiffs state in their response to the Order to Show Cause that their driving records could be affected in the future should they receive additional convictions, that they could be designated habitual offenders in the future, that future insurance underwriting could result in higher premiums, and that their employment could be affected to the extent they earn their livelihood driving. [Filing No. 77 at 21-23.] Again, these allegations do not appear anywhere in the Complaint. [*See* Filing No. 45.] And even if they did, it is well-settled that allegations of future harm are not sufficient to confer standing. *See Otrompke v. Skolnik*, 826 F.3d 999 (7th Cir. 2016) (holding plaintiff who sought to enjoin enforcement of a bar admission rule had not alleged harm, and therefore did not have standing, because he had not yet applied for admission to the bar and "[t]he rule will harm him only if he would be admitted to the Indiana bar were the rule to be invalidated but not otherwise"); *Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688, 692 (7th Cir. 2015) ("Allegations of future harm can establish Article III standing if that harm is certainly impending, but allegations of possible future injury are not sufficient") (citations and quotations omitted).

Finally, Plaintiffs argue that alleging their due process rights were violated is "a concrete harm unto itself," such that they have standing even if they have not alleged any other injuries. [Filing No. 80 at 2.] But Plaintiffs must demonstrate that they had a constitutionally-protected right that was entitled to due process, and the due process itself cannot be the protected interest. *See Olim v. Wakinekona*, 461 U.S. 238, 250-51 (1983) ("[p]rocess is not an end in itself. Its con-

stitutional purpose is to protect a substantive interest to which the individual has a claim of enti-

tlement….").  Additionally, Plaintiffs' argument that they have constitutionally-protected interests

in having an accurate driving record or in having a drivers' license, and were denied due process

related to those interests, rings hollow.  *See, e.g.*, *Shango v. Jurich*, 681 F.2d 1091, 1101 (7th Cir.

1982) ("Constitutionalizing every state procedural right would stand any due process analysis on

its head"); *Indiana Land Co. LLC v. City of Greenwood*, 2003 WL 22208795, *5 (S.D. Ind. 2003)

("Deprivation of a property interest in violation of state law…is not itself a violation of the Con-

stitution….  Federal courts lack the authority to direct state officials to comply with state law")

(internal citations omitted).  Again, the Adjudication Plaintiffs did nothing to challenge their judg-

ments at the state court level.  Without their judgments, none of the harms they identify in connec-

tion with their Abstract Claims could have occurred.  Procedural safeguards were in place at the

state court level, such as the right to appeal.  Each of the Plaintiffs chose not to take advantage of

those procedural safeguards, yet now claims that his or her due process rights were violated be-

cause they have an interest in having a drivers' license and an accurate driving record.  The Court

rejects Plaintiffs' argument that simply alleging their due process rights were violated is sufficient

to allege injury and, consequently, standing.

Because the Adjudication Plaintiffs have not alleged damages caused by the abstracts and

the BMV's receipt of those abstracts tied to either the Carmel Defendants' or the Driving Record

Defendants' actions, as opposed to their own actions in committing traffic infractions, they do not

have standing to assert their Abstract Claims.

   b.  The Deferral Plaintiffs

The Deferral Plaintiffs' Abstract Claims are distinct from the Abstract Claims of the other

categories of Plaintiffs.  While Plaintiffs allege generally that their abstracts were forwarded to the

BMV, the dockets from the Deferral Plaintiffs' state court cases indicate that they were not.  [*See,*

*e.g.*, Filing No. 60-1 (state court docket from Deferral Plaintiff Amanda Alford's case does not

reflect SR16 abstract forwarded to BMV).]  As noted above, the Court can properly consider the

Plaintiffs' state court records. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074,

1081-82 (7th Cir. 1997).  Because those records contradict any allegation that the Deferral Plain-

tiffs' abstracts were sent to the BMV, the Court finds that the Deferral Plaintiffs do not have stand-

ing to assert the Abstract Claims.[8]

 In sum, the Court finds that Plaintiffs have not adequately alleged that they have standing

to assert the Abstract Claims.  Accordingly, the Abstract Claims asserted by all categories of Plain-

tiffs are dismissed as against the Carmel Defendants and the Driving Record Defendants.  The

Abstract Claims are the only claims Plaintiffs assert against the Driving Record Defendants, so the

Court **DIRECTS** the Clerk to **TERMINATE** the Driving Record Defendants – the Carmel City

Court, the Honorable Brian Poindexter, and Superintendent Kent Abernathy – as parties in this

matter.  Additionally, Plaintiffs' Motion for Leave to File Surreply Brief in Opposition to Driving

Record Defendants' Motion to Dismiss, [Filing No. 68], is **DENIED AS MOOT**, since the Court

is dismissing all claims against the Driving Record Defendants on standing grounds, an issue not

discussed in Plaintiffs' proposed surreply brief.

 2.   *The Carmel Defendants' Dismissal Arguments*

 Having considered and decided the threshold issue of standing and dismissing Plaintiffs'

Abstract Claims, the Court will analyze the Carmel Defendants' arguments related to Plaintiffs'

Pre-Judgment/Pre-Adjudication Claims and Judgment/Adjudication Claims brought under § 1983.

---

[8] In any event, even if somehow Plaintiffs had adequately alleged that the Deferral Plaintiffs' ab-
stracts were sent to the BMV, their Abstract Claims would suffer from the same standing issues as
the other categories of Plaintiffs.

a. <u>Subject-Matter Jurisdiction</u>

The Carmel Defendants argue that Plaintiffs' claims are barred by the *Rooker-Feldman* doctrine, a doctrine which gets its name from two decisions of the United States Supreme Court – *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The Court must consider the applicability of the *Rooker-Feldman* doctrine before considering any other affirmative defenses. *Garry v. Geils*, 82 F.3d 1362, 1365 (7th Cir. 1996). If the *Rooker-Feldman* doctrine applies, the Court must dismiss the suit for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1). *Frederiksen v. City of Lockport*, 384 F.3d 437, 438-39 (7th Cir. 2004).

The *Rooker-Feldman* doctrine prohibits federal jurisdiction over claims seeking review of state court judgments "no matter how erroneous or unconstitutional the state court judgment may be." *Kelley v. Med-1 Solutions, LLC*, 548 F.3d 600, 603 (7th Cir. 2008) (citation omitted). Application of the doctrine is limited to cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *see also Kelley*, 548 F.3d at 603. In short, the doctrine prevents a party from effectively trying to appeal a state court decision to a federal district court. *Hukic v. Aurora Loan Services*, 588 F.3d 420, 431 (7th Cir. 2009).

*Rooker-Feldman* "is a narrow doctrine." *Lance v. Dennis*, 546 U.S. 459, 464 (2006). It "applies when the state court's judgment is the source of the injury of which plaintiffs complain in federal court." *Richardson v. Koch Law Firm, P.C.*, 768 F.3d 732, 733 (7th Cir. 2014). The

doctrine "asks what injury the plaintiff asks the federal court to redress, not whether the injury is 'intertwined' with something else." *Iqbal v. Patel*, 780 F.3d 728, 730 (7th Cir. 2015).[9]

The determination of whether the *Rooker-Feldman* doctrine applies "hinges on whether the federal claim alleges that the injury was caused by the state court judgment, or alternatively, whether the federal claim alleges an independent prior injury that the state court failed to remedy." *Sykes v. Cook County Circuit Court Probate Division*, --- F.3d ----, 2016 WL 4784034, *4 (7th Cir. 2016). Simply put, "there must be no way for the injury complained of by a plaintiff to be separated from a state court judgment." *Id.* If a court determines that this separation is not possible, the *Rooker-Feldman* doctrine still only applies if the plaintiff had a reasonable opportunity to raise the issues in the state court proceeding. *Taylor*, 374 F.3d at 533. The *Rooker-Feldman* doctrine "applies to procedural state court rulings as well as substantive ones," and "interlocutory orders entered prior to the final disposition of state court lawsuits are not immune from the jurisdiction-stripping powers of *Rooker-Feldman*." *Sykes*, 2016 WL 4784034 at *4.

---

[9] In 2014, the Seventh Circuit disavowed the "inextricably intertwined" language often used in connection with the *Rooker-Feldman* doctrine. *Richardson*, 768 F.3d at 733-34 ("We are skeptical about the wisdom of asking whether something is 'intertwined' ('inextricably' or extricably) with a state court's judgment…. Courts should stick with the doctrine as stated in [*Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005)]"). Most recently, however, the Seventh Circuit included the "inextricably intertwined" language as part of its *Rooker-Feldman* analysis. *See Sykes*, --- F.3d ----, 2016 WL 4784034 at *4 (stating "But even federal claims which were not raised in state court, or that do not on their face require review of a state court's decision, may still be subject to *Rooker-Feldman* if those claims are inextricably intertwined with a state court judgment"). Whether the term "inextricably intertwined" is included in the analysis or not seems to be a distinction without a difference. The *Sykes* Court explained "inextricably intertwined" to mean "whether the federal claim alleges that the injury was caused by the state court judgment." *Sykes*, 2016 WL 4784034 at *4. The *Richardson* Court, in disavowing the "inextricably intertwined" language, stated that "[t]he *Rooker-Feldman* doctrine applies when the state court's judgment is the source of the injury of which plaintiffs complain in federal court." *Richardson*, 768 F.3d at 733. Thus, the standards set forth in *Richardson* and *Sykes* are functionally the same.

The Carmel Defendants argue that the *Rooker-Feldman* doctrine applies because Plaintiffs' claims "directly attack" their state court judgments. [Filing No. 59 at 15.] They also note that "each named Plaintiff had a reasonable opportunity to appeal the state court judgment about which they now complain," and that "[a]t bottom, this lawsuit is an attempt by these state-court losers to circumvent the state-court judgments." [Filing No. 59 at 15-16.]

Plaintiffs respond that the *Rooker-Feldman* doctrine does not apply to the Deferral Plaintiffs because "they were never convicted under § 8-2 in any state court," so there was never a judgment against them. [Filing No. 64 at 13.] With respect to the Adjudication Plaintiffs, they assert that they are not asking the Court to "undo" or "reject" the § 8-2 convictions, but rather they are "seeking to redress civil rights violations associated with a deceptive citywide revenue scheme centered around not only enforcing a facially unconstitutional ordinance but also focused on protecting the ordinance from court attack on constitutional grounds." [Filing No. 64 at 14.] Plaintiffs argue that the existence of § 8-2 convictions "is not surprising and certainly does not strip the Federal Court of jurisdiction." [Filing No. 64 at 15.] They contend that they are "bringing pre-conviction claims which are wholly independent of the inevitable § 8-2 convictions that the Carmel system generated." [Filing No. 64 at 19.] They argue that they are complaining of injuries that existed in their exact form before any state-court judgments, so cannot be complaining of an injury "caused by" the state court judgments. [Filing No. 64 at 19.]

On reply, the Carmel Defendants argue that Plaintiffs directly challenge the state-court judgments because they cannot allege damages independent of those judgments. [Filing No. 66 at 11-13.] They also assert that Plaintiffs have conceded that the traffic stops or ticketing did not cause any pre-existing injury because they failed to address the Carmel Defendants' points that Carmel police officers are law enforcement officers, have the power to enforce Indiana state law

and Carmel City Code, and can make traffic stops if they witness a violation.  [Filing No. 66 at 13.]  The Carmel Defendants contend that "[w]ithout the State-court judgment, admittance [sic] of guilt, or deferral agreement, no money was transferred from the Plaintiffs to the Carmel Defendants."  [Filing No. 66 at 13.]  They contend that Plaintiffs' argument that seeking relief at the state level was "futile" is conclusory, they do not offer any specifics, and they only cite cases relating to the futility of administrative proceedings.  [Filing No. 66 at 14.]  The Carmel Defendants note that Plaintiffs could have appealed their convictions and did not, and have not alleged any wrongful act by the Carmel Defendants.  [Filing No. 66 at 15-16.]

The Court finds at the outset of this discussion that Plaintiffs have abandoned their Judgment/Adjudication Claims.  For example, Plaintiffs failed to preserve claims based on allegations that Plaintiffs entered into misleading deferral agreements and ultimately paid more than a judgment would have been, that Plaintiffs were illegally prosecuted without due process, and that Plaintiffs were deprived of the right to be tried by a tribunal untainted by financial interest.  This is so because, in response to the Carmel Defendants' *Rooker-Feldman* arguments, Plaintiffs limit their claims to "pre-conviction claims which are wholly independent of the inevitable § 8-2 convictions that the Carmel system generated," and state that their injuries "existed in their exact form prior to any state-court judgment against the Plaintiffs."  [Filing No. 64 at 19.]  These statements, and their failure to address their Judgment/Adjudication Claims in connection with the Carmel Defendants' *Rooker-Feldman* arguments, indicate that they have abandoned those claims – likely after realizing that they would be barred under the *Rooker-Feldman* doctrine.

As for Plaintiffs' Pre-Judgment/Pre-Adjudication Claims, the Adjudication Plaintiffs and the Deferral Plaintiffs set forth the same allegations related to their traffic stops:  that they were given false information regarding their traffic infractions so could not properly defend themselves,

that the Carmel Police Department wrongfully ticketed motorists on Interstate 465, and that the City of Carmel had a policy of improperly ticketing motorists for non-moving violations.  [Filing No. 45 at 3; Filing No. 45 at 14–18.]  The Court addresses the applicability of the *Rooker-Feldman* doctrine to the Pre-Judgment/Pre-Adjudication Claims of each category of Plaintiffs separately.

i.  *Adjudication Plaintiffs*

Significant to the *Rooker-Feldman* analysis, the Court notes that all of the Adjudication Plaintiffs have the equivalent of judgments related to their traffic tickets for violations of § 8-2. Although not reflected on their state court dockets, those who admitted the offense and paid the fine (the Admission Plaintiffs) did so because their admissions resulted in a monetary judgment that they then were obligated to pay.  *See Schumm v. State*, 868 N.E.2d 1202, 1205 (Ind. Ct. App. 2007) (Court noted in case involving trial that "traffic infractions do not involve 'damages' in the same sense as suits for tortious conduct….  [A] monetary judgment entered upon a finding of a violation of an infraction is the functional equivalent of a penal fine; the judgment serves to induce compliance with the statute").  Indeed, Plaintiffs allege that "[e]ach Plaintiff was convicted of an illegal ordinance which did nothing other than adopt 307 state code statutes," and which resulted in "an illegal judgment."  [Filing No. 45 at 31.]  The state court dockets of those who failed to show up for their initial hearings and had a default judgment entered against them (the Default Plaintiffs) reflect those default judgments.  [*See* Filing No. 60-9; Filing No. 60-12; Filing No. 60-16.]  Those who requested bench trials (the Bench Trial Plaintiffs) all lost at trial, and judgments were entered against them.  [*See* Filing No. 60-15; Filing No. 60-17; Filing No. 60-18; Filing No. 60-19.]

Plaintiffs' Complaint is lengthy and quite difficult to follow, but focuses heavily on the Judgment/Adjudication Claims (which the Court has found Plaintiffs have abandoned) and the

Abstract Claims (which the Court has found Plaintiffs do not have standing to assert). Only after Defendants filed the pending motions to dismiss did Plaintiffs begin to focus on their Pre-Judgment/Pre-Adjudication Claims. But, as noted above, the Court must only consider the allegations in the Complaint, not Plaintiffs' latest explication of those allegations in their briefing. The Pre-Judgment/Pre-Adjudication Claims the Court discerns from the Complaint relate to Plaintiffs' allegations that that they were given false information regarding their traffic infractions so could not properly defend themselves, and that the City of Carmel and the Carmel Police Department had a policy of wrongfully ticketing motorists on Interstate 465 and wrongfully ticketing motorists for non-moving violations. [Filing No. 45 at 3; Filing No. 45 at 14-18.] In response to the Court's Order to Show Cause regarding standing, Plaintiffs describe their Pre-Judgment/Pre-Adjudication Claims as relating to an alleged "unconstitutional revenue scheme" that involved ticketing traffic offenses under § 8-2 and providing "misinformation" to motorists which resulted in them not being able to effectively defend against the charges. [*See, e.g.*, Filing No. 77 at 9-10.]

In determining whether the *Rooker-Feldman* doctrine bars Plaintiff's Pre-Judgment/Pre-Adjudication Claims, the Court must focus on the source of the injuries Plaintiffs seek to remedy. For these claims, Plaintiffs appear to seek three types of damages: (1) compensatory and punitive damages for "emotional distress, humiliation and personal indignity, emotional pain, embarrassment, fear, anxiety and anguish"; (2) monetary damages to compensate for the judgments they paid; and (3) declaratory relief. [*See* Filing No. 77 at 17-18.]

First, the Court finds that the *Rooker-Feldman* doctrine does not bar the Adjudication Plaintiffs' Pre-Judgment/Pre-Adjudication Claims to the extent they seek compensatory or punitive damages related to emotional distress, humiliation, emotional pain, embarrassment, fear, anxiety, and anguish from the actual traffic stops. The source of those damages is not the state court

judgments, but rather the traffic stops themselves.  *See Iqbal*, 780 F.3d at 730-31 (stating that plaintiff could not have state court judgments "annulled," but "can contend that he was injured, out of court, by being 'set up' by [defendants] so that they could take over his business and reap the profits he anticipated…. Because [plaintiff] seeks damages for activity that (he alleges) pre-dates the state litigation and caused injury independently of it, the *Rooker-Feldman* doctrine does not block this suit") (emphasis omitted).

Second, to the extent Plaintiffs seek monetary damages to directly compensate them for the fines they paid in connection with their judgments, the *Rooker-Feldman* doctrine bars recovery. The source for this type of damages is the state court judgment itself, making the *Rooker-Feldman* doctrine directly applicable.

Finally, as to Plaintiffs' request for "declaratory relief" related to their Pre-Judgment/Pre-Adjudication Claims, Plaintiffs only allege in the Complaint that they seek a declaration that § 8-2 is unconstitutional, [Filing No. 45 at 4-5; Filing No. 45 at 40.]  This is also a direct attempt to appeal their convictions under § 8-2, since a declaration that the ordinance is unconstitutional would invalidate their state court judgments.  *See Rangel v. Reynolds*, 607 F.Supp.2d 911, 920 (N.D. Ind. 2009) (holding that claims requesting injunctive relief ordering immediate return of plaintiff's daughter to plaintiff's custody were barred by *Rooker-Feldman* doctrine, but § 1983 due process and Fourth Amendment claims related to removal of daughter from custody and requesting monetary damages were not barred because they were not "direct appeals of the state court decision" or "indirect requests for this Court to overturn the decision of the Indiana Court of Appeals").

Any request for declaratory relief that would invalidate the state court judgments is barred by the *Rooker-Feldman* doctrine.[10]

In sum, the *Rooker-Feldman* doctrine bars the Adjudication Plaintiffs' Pre-Judgment/Pre-Adjudication Claims for monetary damages related to the judgments themselves, and for declaratory relief. The Court finds that Plaintiffs had a reasonable opportunity to raise those issues at the state court level, through an appeal. Plaintiffs argue that an appeal would have been futile, but Mr. Maraman's case indicates otherwise.

### ii.    *Deferral Plaintiffs*

The Deferral Plaintiffs set forth the same Pre-Judgment/Pre-Adjudication Claims as the Adjudication Plaintiffs, but the *Rooker-Feldman* analysis differs for the Deferral Plaintiffs because they did not receive judgments at the state court level. [*See, e.g.*, Filing No. 60-1 at 3 (state court docket sheet for Deferral Plaintiff Amanda Alford does not reflect entry of judgment, but instead

---

[10] The Court notes that while the *Rooker-Feldman* doctrine prohibits it from reviewing state court determinations, *Heck v. Humphrey*, 512 U.S. 477 (1994), "bars any civil rights claim that would necessarily invalidate a conviction or sentence. Under *Heck*, it does not matter whether plaintiff has exhausted all remedies or whether the possibility of further state court appeals remains; the plaintiff must show that his state court conviction has been vacated before he can use section 1983 to seek damages resulting from that conviction." *Zieman v. City of Chicago*, 2004 WL 1793410 (N.D. Ill. 2004). "[U]nder current law the plaintiff in such a case would first have to get the conviction set aside if his claim that his constitutional rights had been infringed would, if accepted, invalidate his conviction…." *Nesses v. Shepard*, 68 F.3d 1003, 1005 (7th Cir. 1995). Although the Carmel Defendants did not raise an argument under *Heck*, that principle provides an independent basis for dismissal of all of the Adjudication Plaintiffs' claims. *See, e.g.*, *Mehta v. Village of Bolingbrook*, 2014 WL 7450304, *5 (N.D. Ill. 2014) (dismissing § 1983 claim related to allegedly improper traffic stop that resulted in conviction for failure to signal a turn under *Heck*, because claim was "based on allegations that are inconsistent with his conviction on the charge of failure to signal a turn," "the basis for [the] section 1983 claim is inconsistent with his conviction on the failure to signal charge," and "*Heck* therefore bars the claim, because the conviction has not been vacated"). Here, the Pre-Judgment/Pre-Adjudication claims would necessarily call into question the validity of the § 8-2 judgments, because the Pre-Judgment/Pre-Adjudication claims are premised on the invalidity of § 8-2 – *i.e.*, that Plaintiffs were improperly stopped because § 8-2 was invalid or unconstitutional.

entry into deferral agreement); Filing No. 60-5 at 5 (Deferral Plaintiff Michael Fuller's deferral agreement noting that if he failed to comply with the terms of the agreement, the City of Carmel reserved the right to re-file the case and "seek an entry of judgment" against him – the City of Carmel did not re-file the case, and no judgment was entered).] The *Rooker-Feldman* doctrine only applies where the plaintiff challenges a state court judgment. *Sykes*, 2016 WL 4784034 at *4. Consequently, the Deferral Plaintiffs' Pre-Judgment/Pre-Adjudication Claims are not barred by the *Rooker-Feldman* doctrine.

        b.   <u>Other Grounds for Dismissal</u>

Left in play after the Court's standing and subject-matter jurisdiction analyses are the Adjudication Plaintiffs' Pre-Judgment/Pre-Adjudication Claims for compensatory and punitive damages related only to the traffic stops themselves (for humiliation, embarrassment, etc.), and the Deferral Plaintiffs' Pre-Judgment/Pre-Adjudication Claims for the same types of compensatory and punitive damages,[11] and for declaratory relief. The Court focuses on the general adequacy of the allegations related to the Pre-Judgment/Pre-Adjudication Claims.

The Carmel Defendants argue that Plaintiffs' claims fail to satisfy Fed. R. Civ. P. 8 because they use phrases such as "it is believed discovery will show" and "it is anticipated discovery will reveal" twenty-five times in the Complaint. [Filing No. 59 at 20-21.] The Carmel Defendants contend that Plaintiffs' allegations are conclusory and insufficient.

Plaintiffs respond that their Complaint "identifies the specific activity" complained of. [Filing No. 64 at 31.]

---

[11] The Deferral Plaintiffs cannot properly seek compensatory damages for any judgments because, as discussed above, no judgments were entered against them. Any claim for compensatory damages would have to relate to their traffic stops themselves.

The Carmel Defendants respond that Plaintiffs fail to address their argument.  [Filing No. 66 at 7.]

Plaintiffs' Complaint is replete with the phrases "[d]iscovery will show," "[i]t is believed discovery will show," "[i]t is believed further investigation and discovery will show," "[d]iscovery is expected to show," and "[d]iscovery will demonstrate."  [*See, e.g.*, Filing No. 45 at 3, ¶¶ 5, 7; Filing No. 45 at 7, ¶ 41; Filing No. 45 at 13, ¶ 76; Filing No. 45 at 19, ¶ 100.]  Plaintiffs use these phrases in connection with their Pre-Judgment/Pre-Adjudication Claims in particular:

- "It is believed that discovery will show a policy of providing motorists inaccurate and even false information about the ordinance citations given…," [Filing No. 45 at 3, ¶ 7];

- "Discovery will show that Carmel was aware that its practices were illegal and a violation of motorists' civil rights and continued to pursue such policies…in traffic stops…," [Filing No. 45 at 3, ¶ 8];

- "It is believed further investigation and discovery will show that Carmel and its representatives were aware that the ordinance upon which it based its policies and actions…was invalid, contrary to law and unconstitutional," [Filing No. 45 at 7, ¶ 41];

- "Discovery will show that for many years Carmel had a policy of trying to turn every traffic stop made by the Carmel police into a § 8-2 ordinance violation stop, no matter the traffic situation and without regard to whether there was an existing Carmel ordinance to support the citation," [Filing No. 45 at 12, ¶ 67];

- "Discovery is expected to show that Carmel had a policy of turning all claimed violations of Indiana's traffic regulations, set forth in Title 9 of the Indiana Code, into § 8-2 violations," [Filing No. 45 at 13-13, ¶ 76];

- "Discovery will show that Carmel issued § 8-2 ordinance violations for 'moving violations'….notwithstanding the fact that Indiana Statutes comprehensively address these issues," [Filing No. 45 at 14, ¶ 77];

- "[D]iscovery is expected to show that Carmel had/has a policy of issuing illegal § 8-2 ordinance citations for non-moving violations about which Carmel has/had no local interest and that are comprehensively addressed by Indiana statutes," [Filing No. 45 at 14, ¶ 79 (emphasis omitted)];

- "Discovery will show a policy of providing motorists inaccurate and even false information about the ordinance citations given and pending in court, [and] provided such information both through the city government and the mail," [Filing No. 45 at 16, ¶ 85];

- "Discovery will show that Carmel was aware that its practices were illegal and a violation of motorists' civil rights and continued to pursue such policies both in traffic stops and in prosecutions…," [Filing No. 45 at 16, ¶ 86];

- "It is believed discovery will show that Carmel had policies and procedures which were adverse to providing ticketed motorists with an understanding of their rights as it pertained to trials in Carmel City Court," [Filing No. 45 at 16, ¶ 87]; and

- "Discovery will demonstrate that the defendants individually and as a group established policies procedures and practices, prior to any judicial involvement, to cause false/illegal/invalid and unconstitutional proceedings to be filed, resulting in violation of plaintiffs' constitutional rights," [Filing No. 45 at 19, ¶ 100].

Additionally, Plaintiffs allegations asserted specifically against the individual Carmel Defendants all begin with "[d]iscovery is expected to show" or "[i]t is believed that discovery will show." [*See* Filing No. 45 at 24-27, ¶¶ 129, 131, 133, 136.]

Plaintiffs must set forth factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. 544, 555 (2007). Plaintiffs' claims must be "plausible" – meaning that there are "enough facts to raise a reasonable expectation that discovery will reveal evidence" supporting Plaintiffs' allegations. *Id.* at 556. Plaintiffs' allegations also must not just be "abstract recitations of the elements of a cause of action or conclusory legal statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

The Court finds that Plaintiffs' allegations against the Carmel Defendants that support their Pre-Judgment/Pre-Adjudication Claims are too speculative to state a claim for relief. The vast majority of Plaintiffs' allegations related to Pre-Judgment/Pre-Adjudication Claims are prefaced with a statement that discovery will show certain allegations are true, or that Plaintiffs believe

discovery will show that to be the case.  Because these allegations all turn wholly on what Plaintiffs think they will learn through discovery, and not on what Plaintiffs already know to be true, they are too speculative to support their Pre-Judgment/Pre-Adjudication Claims.  Additionally, simply stating that "discovery will show," or that "Plaintiffs believe discovery will show" is not enough to "raise a reasonable expectation that discovery will reveal evidence," *Twombly*, 550 U.S. at 545. More certainty is needed.  *See Dahlia v. Rodriguez*, 735 F.3d 1060, 1076 (9th Cir. 2013) ("[I]t is well within [the Court's] wheelhouse to reject, as implausible, allegations that are too speculative to warrant further factual development").  In short, while Plaintiffs' allegations suggest that the Carmel Defendants may have engaged in the acts alleged, they do not raise a plausible inference that they did so.  *See Oliver v. DirecTV, LLC*, 2015 WL 1727251, *3 (N.D. Ill. 2015) (allegations that defendants possibly used automatic telephone dialing system in support of plaintiff's Tele-phone Consumer Protection Act claim dismissed because allegations did not raise a plausible in-ference that defendants actually did so); *Hottenstein v. City of Sea Isle City*, 2011 WL 2559523, *3 (D. N.J. 2011) (allegations that "discovery will show" if defendant's vehicle was involved in accident were "bare speculation" and could not withstand motion to dismiss; Court stated that while it must accept as true all allegations in the complaint, "it is not required to accept unsupported conclusions or unwarranted inferences").  Plaintiffs' allegations related to their Pre-Judgment/Pre-Adjudication Claims are the epitome of speculative, and they must be "above the speculative level" to adequately state a claim.  *Munson*, 673 F.3d at 633.

Moreover, some of Plaintiffs' allegations related to their Pre-Judgment/Pre-Adjudication Claims are not linked in any way to the Plaintiffs.  For example, Plaintiffs allege that "[a]nother example of Carmel's abusive use of § 8-2 relates to Carmel's long time policy of issuing § 8-2 ordinance citation[s] to motorists for allegedly speeding on Interstate 465." [Filing No. 45 at 14,

¶ 78.] Yet, Plaintiffs do not allege that any of them received § 8-2 ordinance citations for speeding on Interstate 465. Plaintiffs therefore lack standing to assert such claims.

Other alternative reasons justify dismissal. The Complaint does not contain any allegation that any of the Carmel Defendants were personally involved in the stops that form the basis of Plaintiffs' Pre-Judgment/Pre-Adjudication Claims. And the validity of any of the Plaintiffs' traffic stops would be based on an objective standard as to whether there was reasonable suspicion to believe they committed a traffic violation. Because no Plaintiff contests that he or she committed a traffic infraction under Indiana law, there could be no basis to dispute the validity of the stops. *See United States v. Uribe*, 709 F.3d 646, 650 (7th Cir. 2013) (validity of traffic stop judged by whether officer had reasonable suspicion traffic violation was committed, and "officer's subjective motivations for stopping…a suspect are not relevant to the reasonableness inquiry") (quoting *United States v. Bullock*, 632 F.3d 1004, 1012 (7th Cir. 2011)).

Finally, the Court notes an overarching problem with Plaintiffs' § 1983 claims: Plaintiffs make no attempt whatsoever to explain why § 8-2 violates the United States Constitution, instead merely relying on the fact that the Indiana Court of Appeals found it to be invalid. But a finding that § 8-2 is invalid under Indiana's "Home Rule" laws does not make issuing a citation under § 8-2 unconstitutional.[12] *See Whitman v. Nesic*, 368 F.3d 931, 935 n.1 (7th Cir. 2004) ("Regardless of a plaintiff's insistence that a defendant failed to follow state law, the mere fact that state rules or statutes are violated does not in and of itself amount to a constitutional violation or give rise to an actionable § 1983 claim"); *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) ("42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws…."); *Pasiewicz*

---

[12] As noted above, the Indiana Court of Appeals did not make any finding regarding the constitutionality of § 8-2.

*v. Lake Co. Forest Pres. Dist.*, 270 F.3d 520, 526 (7th Cir. 2001) ("The federal government is not the enforcer of state laws").  The inadequacy of Plaintiffs' allegations is further highlighted by the fact that Plaintiffs all received their § 8-2 citations before the *Maraman* decision, at a point in time when § 8-2 had not yet been declared invalid.  The timing of Plaintiffs' § 8-2 citations also undermines Plaintiffs' only stated basis for the § 1983 claim – that § 8-2 is invalid.[13]

The inadequacy of Plaintiffs' Pre-Judgment/Pre-Adjudication Claims is not surprising, given that Plaintiffs began focusing on those allegations late in the game – long after the Complaint was filed, and after reviewing the pending motions to dismiss and realizing that their Judgment/Adjudication Claims – and any claims seeking damages directly related to their § 8-2 convictions – were problematic.  The Seventh Circuit Court of Appeals recently noted in a case that was dismissed by the district court based on the *Rooker-Feldman* doctrine that "[t]o the extent the [plaintiffs] hint that they seek damages for extrajudicial injuries that wouldn't be barred by the *Rooker-Feldman* doctrine…, they do not develop any meaningful argument that we can review….  They do not explain the significance, for example, or their scattershot references to [various] statutes…."  *Davenport v. Roundpoint Mortgage Servicing Corp.*, 2016 WL 4821057, *1 (7th Cir. 2016).  The Court cites *Davenport* merely to note that it finds itself in a similar boat.  Plaintiffs' attempt to

---

[13] Indeed, presumably nothing would have prevented the City of Carmel from enacting ordinances that more specifically addressed traffic violations, rather than simply incorporating state statutes.  The City of Indianapolis, for example, has done just that.  *See, e.g.*, Indianapolis Code § 441-213(b) ("It shall be unlawful for the operator of any vehicle to pass or overtake any other vehicle moving in the same direction within any area declared and established as a no-passing zone by the board of public works or the police, as provided in subsection (a) of this section, or to exceed the speed limit so fixed, if the zone is indicated by appropriate signs or marks on the roadway indicating the beginning and end of the zone and any such speed limit and signs and markings are in place and clearly visible to an ordinarily observant person; or if so directed by a police officer in any temporary emergency").

salvage claims from its Complaint that are not affected by either the standing issue or the applicability of the *Rooker-Feldman* doctrine fails, as they have not adequately alleged their Pre-Judgment/Pre-Adjudication Claims that survived those two threshold issues.[14]

### 3. *Plaintiffs' State Law Claims*

Because the Court is dismissing Plaintiffs' § 1983 claims – the only federal claims in this litigation – Plaintiffs' only remaining claims are those brought under Indiana state law (for unjust enrichment and money had and received against the City of Carmel).[15]   Accordingly, the Court must determine whether to exercise its discretion to retain jurisdiction over those claims pursuant to 28 U.S.C. § 1367(a).

The district court ultimately has discretion whether to exercise supplemental jurisdiction over a plaintiff's state law claims. *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639-40 (2009); 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim…if…the district court has dismissed all claims over which it has original jurisdiction…").  When deciding whether to exercise supplemental jurisdiction, "'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'"  *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  "In the usual case in which all federal claims are dismissed before trial, the balance of these factors will point to declining to exercise jurisdiction over any remaining pendent state-law claims.  Hence the general rule is that, when all federal claims are dismissed before trial, the district court should relinquish

---

[14] The Court need not, and will not, address the Carmel Defendants' other arguments in support of their Motion to Dismiss.

[15] As previously noted, Plaintiffs list several "anticipated future cause(s) of action" in their Complaint.  [Filing No. 45 at 36-40.]  This practice is improper and if the Court were not dismissing all of Plaintiffs' claims, it would strike those "anticipated future causes of action."

jurisdiction over pendent state-law claims rather than resolving them on the merits." *Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994).

This litigation is in its early stages. Defendants have not yet answered the allegations of Plaintiffs' Complaint, and no discovery has taken place. Accordingly, the Court concludes that all four factors – economy, convenience, fairness, and comity – strongly weigh in favor of it relinquishing supplemental jurisdiction over Plaintiffs' state law claims and dismissing those claims without prejudice.

In sum, for the reasons discussed above, the Court **GRANTS** the Driving Record Defendants' Motion to Dismiss, [Filing No. 56], and **GRANTS** the Carmel Defendants' Motion to Dismiss, [Filing No. 58]. Plaintiffs' federal claims brought under 42 U.S.C. § 1983 are dismissed with prejudice, and their state law claims are dismissed without prejudice.

### III.
### THE MOTION FOR SANCTIONS

The Carmel Defendants have filed a Motion to Impose Sanctions, arguing that the Complaint has fundamental jurisdictional defects, that Plaintiffs' claims are frivolous, and that sanctions are warranted under Fed. R. Civ. P. 11 and 28 U.S.C. § 1927. [Filing No. 73.]

### A. Standard of Review

Federal Rule of Civil Procedure 11 provides the following, in relevant part:

By presenting to the court a pleading, written motion, or other paper – whether by signing, filing, submitting, or later advocating it – an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) It is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) The claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) The factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) The denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11.

The decision whether to impose Rule 11 sanctions "is a judgment call." *Matter of Central Ice Cream Co.*, 836 F.2d 1068, 1072 (7th Cir. 1988). The Seventh Circuit has held that Rule 11 sanctions are appropriate against an attorney when he has demonstrated an ignorance of existing law. *Borowski v. DePuy, Inc., a Div. of Boehringer Mannheim Co.*, 850 F.2d 297, 304-05 (7th Cir. 1988).

28 U.S.C. § 1927 provides that a lawyer "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *See also Carr v. Tillery*, 591 F.3d 909, 919 (7th Cir. 2010) (citations and quotations omitted). The purpose of § 1927 "is to deter frivolous litigation and abusive practices by attorneys and to ensure that those who create unnecessary costs also bear them." *Riddle & Assocs., P.C. v. Kelly*, 414 F.3d 832, 835 (7th Cir. 2005) (citations and quotations omitted). An award under § 1927 is compensatory, not punitive. *Shales v. General Chauffeurs, Sales Drivers & Helpers Local Union No. 330*, 557 F.3d 746, 749 (7th Cir. 2009).

Bad faith is required for a § 1927 award, but there is a distinction between subjective and objective bad faith. *Dal Pozzo v. Basic Machinery. Co., Inc.*, 463 F.3d 609, 614 (7th Cir. 2006). Subjective bad faith, which is more difficult to prove, is not always necessary and "must be shown only if the conduct under consideration had an objectively colorable basis." *Id.* Objective bad

faith does not require a finding of malice or ill will; instead, "reckless indifference to the law will qualify." *Id.* The Court has discretion to impose § 1927 sanctions when an attorney has acted in an objectively unreasonable manner by pursuing a claim that is without a plausible legal or factual basis. *Jolly Group, Ltd. v. Medline Industries, Inc.*, 435 F.3d 717, 720 (7th Cir. 2006). Additionally, § 1927 imposes "a continuing duty upon attorneys to dismiss claims that are no longer viable." *Id.* Courts have long held that § 1927 sanctions are appropriate where a litigant's claims are foreclosed by existing law and the attorney reasonably should have known that the claims were foreclosed. *See, e.g.*, *Webb v. Bd. of Trs. of Ball State Univ.*, 2001 WL 548314, * 11 (S.D. Ind. 2001).

## B. Discussion

In support of the Motion to Impose Sanctions, the Carmel Defendants argue that they informed Plaintiffs of the applicability of the *Rooker-Feldman* doctrine, yet Plaintiffs continued to litigate the case and filed five different versions of the Complaint, including one version that "included wild and unsupported accusations of mail fraud levied against a Carmel Police Officer." [Filing No. 73 at 1-2.] The Carmel Defendants also note that Plaintiffs filed an "Emergency Motion" which "pleaded for relief outside the subject matter of this lawsuit." [Filing No. 73 at 2.] The Carmel Defendants reiterate their arguments that Plaintiffs' claims are barred by the *Rooker-Feldman* doctrine, claim preclusion or res judicata, and the existence of deferral agreements for some of the Plaintiffs. [Filing No. 73 at 5-8.] They also contend that Plaintiffs' conspiracy claims are unsupported and "based upon Plaintiffs' attorney's internal suspicions that some type of conspiratorial behavior is occurring," and that their claims are "riddled with false statements and allegations that have no support in the law, and could only have been pleaded with a motive to harass."

[Filing No. 73 at 8-11.][16]  The Carmel Defendants request that Plaintiffs' counsel "be ordered to pay all or at least a significant portion of [the Carmel Defendants'] defense fees." [Filing No. 73 at 12.]

Plaintiffs respond by arguing that the Carmel Defendants' motion is "little more than an attempt to re-emphasize the arguments raised in its still pending motion to dismiss." [Filing No. 74 at 1.]  They reiterate their arguments against the applicability of the *Rooker-Feldman* doctrine and the principle of *res judicata*, and also argue that the Deferral Plaintiffs never agreed not to file a § 1983 claim "based upon misrepresentations and due process violations made in relationship to the deferral program." [Filing No. 74 at 3-9.]  Plaintiffs also assert that their conspiracy allegations are sufficient and "there is a long history of civil rights violations of the type claimed here and a specific unconstitutional city policy, both outlined in the detailed Complaint." [Filing No. 74 at 9-11.]  Plaintiffs argue that § 1927 sanctions cannot be applied to an initial pleading, and that they have simply attempted to clarify their Complaint and to "address ongoing distortions of the claim, as ordered by the Court…." [Filing No. 74 at 11.]  Plaintiffs request that the Court award them "all reasonable fees and costs incurred in responding" to the Carmel Defendants' motion. [Filing No. 74 at 13.]

On reply, the Carmel Defendants address Plaintiffs' personal attacks on the Carmel Defendants' counsel, and reiterate many of the arguments they set forth in their initial brief. [Filing No. 75.]

---

[16] Plaintiffs do not set forth a separate § 1983 "conspiracy" claim in their Complaint, but many of their allegations refer to a policy or practice, carried out by various individuals or entities.  In any event, a § 1983 "conspiracy" claim would fail for the same reasons Plaintiffs' § 1983 claims fail.

As discussed above, Plaintiffs' Abstract Claims are all barred for lack of standing.  But standing was not raised as an issue by the Carmel Defendants, so the Court does not find it appropriate to impose sanctions for Plaintiffs' failure to recognize that their Abstract Claims were defective for that reason.  The Carmel Defendants did, however, raise the applicability of the *Rooker-Feldman* doctrine early on, and Plaintiffs did not abandon their Judgment/Adjudication Claims on that basis until filing their response briefs.  Whether *Rooker-Feldman* applies to the Judgment/Adjudication Claims is not even a close call, and Plaintiffs should have abandoned those claims much sooner than in response to the motions to dismiss.  But Plaintiffs' Pre-Judgment/Pre-Adjudication Claims were a closer call and, as discussed above, some fail because they are not adequately alleged – a basis independent of the *Rooker-Feldman* doctrine.  The Court finds that sanctions in connection with the Pre-Judgment/Pre-Adjudication Claims is not warranted.

The Court is disturbed by Plaintiffs' scattershot approach to this litigation, as demonstrated by the fact that Plaintiffs amended their complaint three times in three months.  Further, Plaintiffs' claims have evolved over time in reaction to the Defendants' and the Court's actions.  However, the Court does not find that Plaintiffs' counsel's conduct has risen to a sanctionable level.  Additionally, as discussed below, the Court is dismissing Plaintiffs' federal claims brought under § 1983 with prejudice.  Accordingly, this litigation is over and Plaintiffs may not attempt to re-

fashion their claims yet again.  Defendants' Motion to Impose Sanctions, [Filing No. 72], is **DE-NIED**.[17]

## IV.
### CONCLUSION

For the reasons detailed herein, the Court **GRANTS** the Driving Record Defendants' Motion to Dismiss, [Filing No. 56], and **GRANTS** the Carmel Defendants' Motion to Dismiss, [Filing No. 58].  Plaintiffs' § 1983 claims are **DISMISSED WITH PREJUDICE**.  Pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), a plaintiff may amend its complaint once as a matter of course in response to a motion to dismiss. *Brown v. Bowman*, 2011 WL 1296274, *16 (N.D. Ind. 2011). The 2009 notes to that rule emphasize that this amendment "will force the pleader to consider carefully and promptly the wisdom of amending to meet the arguments in the motion.  A responsive amendment may avoid the need to decide the motion or reduce the number of issues to be decided, and will expedite determination of issues that otherwise might be raised seriatim."  Plaintiffs amended their Complaint three times in the first three months after filing their initial complaint, and then chose not to exercise their right to amend again as a matter of course pursuant to Rule 15(a)(1)(B) in response to the two current Motions to Dismiss but, instead, chose to brief the motions and adjudicate the issues.  The Court is not required to give Plaintiffs yet another chance

---

[17] Plaintiffs request that the Court award them "all reasonable fees and costs incurred" in responding to the Carmel Defendants' Motion to Impose Sanctions.  [Filing No. 74 at 13.]  The Court denies that request, as Plaintiffs did not file a separate motion requesting that relief as required by Local Rule 7-1 ("[m]otions must be filed separately….  A motion must not be contained within a brief, response, or reply to a previously filed motion, unless ordered by the court").  Additionally, Plaintiffs did not provide the Carmel Defendants with the requisite 21-day notice under Fed. R. Civ. P. 11(c)(2).  Finally, the Court would deny such a request in any event, as the Carmel Defendants' argument regarding Plaintiffs' continued pursuit of some claims that were clearly barred by the *Rooker-Feldman* doctrine is not meritless.

to plead their federal claims because they have already had multiple opportunities to cure deficiencies in their pleadings.  *See Emery v. American General Finance, Inc.*, 134 F.3d 1321, 1323 (7th Cir. 1998).  Further, Plaintiffs have not given any indication that they could, in fact, successfully amend their complaint to cure the defects identified above, even if given the opportunity to do so. Considering the procedural history of this case, particularly the fact that Plaintiffs have already had the opportunity to re-plead their allegations, the Court, in its discretion, dismisses Plaintiffs' § 1983 claims with prejudice.  Plaintiffs' state law claims for unjust enrichment and money had and received are **DISMISSED WITHOUT PREJUDICE**.

Also based on the foregoing, the Court:

- **DENIES** the Carmel Defendants' Request for Oral Argument, [Filing No. 67];

- **DENIES** Plaintiffs' Motion to Strike Carmel Defendants' Exhibits 1-19 and § II of Their Brief in Support of Motion to Dismiss or, in the Alternative, Motion to Convert Carmel Defendants' Motion to Dismiss Into Summary Judgment Motion, [Filing No. 61];

- **DENIES AS MOOT** Plaintiffs' Motion for Leave to File Surreply Brief in Opposition to Driving Record Defendants' Motion to Dismiss, [Filing No. 68]; and

- **DENIES** the Carmel Defendants' Motion to Impose Sanctions filed by the Carmel Defendants, [Filing No. 72].

Date: 10/6/2016

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**